# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Criminal Action Number** |
| ) | **13-00276-01-CR-W-DW** |
| **Richard Brown,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS IDENTIFICATION WITH SUGGESTIONS (Doc. #20) filed on March 28, 2014, by defendant Richard Brown ("Brown"). On July 11, 2014, the undersigned held an evidentiary hearing on Brown's motion. Brown was present and represented by his counsel, Assistant Federal Public Defender Stephen C. Moss. The government was represented by Assistant United States Attorney William L. Meiners. At the evidentiary hearing, testimony was given by two witnesses: Officers Ben Haskett and Christopher J. Taylor with the Kansas City, Missouri Police Department. Additionally, the following exhibit was admitted into evidence: Gov't Ex. #1 [Dash camera video]. On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On April 10, 2013, Officer Ben Haskett of the Kansas City, Missouri Police Department was on patrol with his partner Officer Rashonda Williams. Tr. at 4.

2. At approximately 6:15 p.m., Officers Haskett and Williams responded to an armed robbery call. Tr. at 4.

3. Upon arriving at the scene, Officer Christopher Taylor was already there with the female robbery victim. Tr. at 4-5, 36.

1

4. The victim reported to the officers that after she had exited her vehicle near her apartment, a man came up behind her, produced a gun after she turned around, and demanded her money. Tr. at 5, 27-28.

5. The victim told the officers that she had then thrown her purse on the ground and told the robber that her money was in the purse. Tr. at 5, 27-28.

6. The robber then grabbed the purse, ran back to a vehicle, and drove south away from the location. Tr. at 5.

7. The victim described the robber as a black male of an approximate height and weight wearing blue shorts (possibly denim) and a hoodie (possibly blue or gray). Tr. at 6, 16-17, 28.

8. The victim described the robber's car as a dark-colored Chrysler (possibly a 300) with dark tinted windows. Tr. at 36.

9. The victim described the robber's gun as a silver handgun. Tr. at 6, 21.

10. The victim informed the officers that her iPhone was in her purse. Tr. at 5.

11. Officer Taylor, with the victim's assistance, then tracked the location of the iPhone. Tr. at 5, 19-20, 37-38.

12. In an area near where the iPhone had been tracked, some officers with the Kansas City, Missouri Police Department observed a vehicle matching the vehicle description provided by the victim. Tr. at 5-6.

13. Officer Haskett was told that as officers approached the vehicle following a car chase, three suspects had run from the vehicle. Tr. at 7.

14. Officer Haskett also received information that the suspects had been apprehended from the vehicle and two of the suspects were close to the robber description previously provided by the victim. Tr. at 6-7.

15. Because of the proximity of the suspects to the location of the victim, the officers decided to drive the victim by the two suspects who were close to the robber description previously provided by the victim. Tr. at 7.

16. Officer Haskett told the victim that a vehicle had been found matching the description she had provided and two suspects – similar in height, weight, age, and clothing worn – had been apprehended. Tr. at 26-27.

17. Officer Haskett told the victim that they were going to drive by the two suspects to see if she could identify either one. Tr. at 27.

18. The victim sat in the front seat of the police vehicle with Officer Haskett driving and Officer Williams in the back seat. Tr. at 8.

19. As the police vehicle was nearing the location where one of the suspects had been apprehended, Officer Haskett radioed ahead and the suspect was brought close to the street. Tr. at 8.

20. As the police car drove by, the officers in the car asked the victim if she recognized the person. Tr. at 8-9.

21. The victim positively identified the first suspect (Brown) as the individual who had robbed her. Tr. at 9, 14, 29-30.

22. The officers then drove the victim past the second suspect. Tr. at 9, 11.

23. The victim could not identify the second suspect. Tr. at 9, 11.

24. Approximately 45 minutes elapsed between the time of the robbery and the show-up procedure. Tr. at 6.

## PROPOSED CONCLUSIONS OF LAW

In his motion before the Court, Brown seeks the suppression of the "show up"[1] identification made by the robbery victim, arguing that the procedure utilized was impermissibly suggestive and unreliable. To that end, the Supreme Court has noted:

> In our system of justice, fair trial for persons charged with criminal offenses is secured by the Sixth Amendment, which guarantees to defendants the right to counsel, compulsory process to obtain defense witnesses, and the opportunity to cross-examine witnesses for the prosecution. Those safeguards apart, admission of evidence . . . is ordinarily governed by [rules of evidence], and the reliability of relevant testimony typically falls within the province of the jury to determine. This Court has recognized, in addition, a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime.

---

[1] In broad terms, a "show-up" procedure refers to the law enforcement practice of "showing suspects singly to persons for the purposes of identification." *United States v. Winfrey,* 403 F. App'x 432, 435 (11th Cir. 2010).

3

*Perry v. New Hampshire*, 132 S.Ct. 716, 720 (2012). With regard to Constitutional protection mentioned by the *Perry* court, the Supreme Court has consistently affirmed that a defendant has a due process right not to be subjected to an identification procedure that creates a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254 (1977) (*quoting Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 970-71 (1968)). *See also Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972 (1967).

Constitutional due process requires the suppression of any pretrial identification procedure that is unduly suggestive <u>and</u> not otherwise independently reliable. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253 ("reliability is the linchpin in determining the admissibility of identification testimony"). Again, as noted by the Court in *Perry*:

> An identification infected by improper police influence, our case law holds, is not automatically excluded.[2] Instead, the trial judge must screen the evidence for reliability pretrial. If there is a very substantial likelihood of irreparable misidentification, the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting

---

[2] In *Perry*, Justice Ginsberg explained why a broad prophylactic rule of suppression was not necessary:

> The Constitution, our decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit. Constitutional safeguards available to defendants to counter the [government's] evidence include the Sixth Amendment rights to counsel, compulsory process, and confrontation plus cross-examination of witnesses. Apart from these guarantees, we have recognized, state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial. Only when evidence is so extremely unfair that its admission violates fundamental conceptions of justice have we imposed a constraint tied to the Due Process Clause.

*Perry*, 132 S.Ct. at 718 (*citations and internal punctuation omitted*).

> effect of the police-arranged suggestive circumstances, the
> identification evidence ordinarily will be admitted, and the jury
> will ultimately determine its worth.

*Perry*, 132 S.Ct. at 720.

Consequently, although show-up identifications might be viewed as inherently suggestive, admitting them into evidence does not automatically violate due process. Instead, the key question is whether the show-up procedure utilized was <u>unduly</u> suggestive and unnecessary. Id. at 724. Show-up procedures rise to this level "only when police aggravate the suggestiveness of the confrontation." *United States v. Winfrey,* 403 F. App'x 432, 435 (11th Cir. 2010).

Further, even if law enforcement officers use an overly suggestive procedure, suppression as a potential remedy requires "courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification,'" which in turn brings the focus to the reliability of the identification. *Perry,* 132 S.Ct at 724-25.

> [Only w]here the "indicators of [a witness'] ability to make an
> accurate identification" are "outweighed by the corrupting effect"
> of law enforcement suggestion, [should an] identification be
> suppressed. Otherwise, the evidence (if admissible in all other
> respects) should be submitted to the jury.

*Id*. at 725. In deciding whether, under the totality of the circumstances, "the identification was nonetheless reliable," a court must consider several factors, including: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253.

Viewing the evidence of the show-up procedure (and resulting identification) at issue in this case, the Court does not find that suppression for any due process violation is warranted. The identification occurred within a reasonable time – approximately 45 minutes after the robbery and very shortly after Brown was apprehended. *Compare United States v. Sanchez,* 422 F.2d 1198, 1200 (2d Cir. 1970) ("prompt on-the-scene confrontation . . . was consistent with good police work . . . [in order] to insure the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is fresh"); *Berry v. Cunningham,* 2012 WL 4174875, op. at *5 (E.D.N.Y. Sept. 19, 2012) ("[t]he identification took place about an hour after the commission of the crime and only five minutes after the arrest[;][t]he arresting officers were justified in seeking confirmation of whether they had arrested a likely suspect, in order to avoid arresting an innocent person"). Moreover, the court is satisfied – for purposes of a due process evaluation – the victim had an adequate opportunity to view her assailant during the robbery, afforded officers a meaningful description, and positively identified Brown (and did not positively identify another individual). Based on the foregoing, the Court will not suppress the identification and will leave it to counsel to challenge the adequacy and accuracy of the identification at trial through cross-examination and jury argument.

In accordance with the foregoing discussion, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS IDENTIFICATION WITH SUGGESTIONS (Doc. #20) filed on March 28, 2014, by defendant Richard Brown.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and

serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

          */s/ John T. Maughmer*
**John T. Maughmer
United States Magistrate Judge**